**CONFORMED COPY**

1  Kevin P.B. Johnson (Bar No. 177129)
   kevinjohnson@quinnemanuel.com
2  QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
3  555 Twin Dolphin Drive, 5th Floor
   Redwood Shores, California 94065
4  Telephone: (650) 801-5000
   Facsimile: (650) 801-5100
5
   Edward D. DeFranco (Bar. No.
6  165596)
   eddefranco@quinnemanuel.com
7  Thomas Pease (*pro hac vice* pending)
   thomaspease@quinnemanuel.com
8  QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
9  51 Madison Avenue, 22nd Floor
   New York, New York 10010
10 Telephone: (212) 849-7000
   Facsimile: (212) 849-7100

David Nelson (*pro hac vice* pending)
davenelson@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Steven M. Anderson (Bar No. 144014)
stevenanderson@quinnemanuel.com
Rory S. Miller (Bar. No. 238780)
rorymiller@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

11 Attorneys for Plaintiff Sony Corporation

FILED
CLERK, U.S. DISTRICT COURT
FEB - 9 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

12          UNITED STATES DISTRICT COURT

13          CENTRAL DISTRICT OF CALIFORNIA

14                 WESTERN DIVISION

15 SONY CORPORATION, a Japanese
16 corporation,

          CASE NO. CV11 - 01235 VBF(PJW)

17          Plaintiff,

   **COMPLAINT FOR PATENT
   INFRINGEMENT**

18      vs.

   **JURY TRIAL DEMANDED**

19 LG ELECTRONICS USA,, INC. a
   Delaware corporation,
20
          Defendant.
21

22

23

24

25

26

27

28

02347.51742/3959541.1

Plaintiff Sony Corporation files this complaint against LG Electronics U.S.A., Inc. (herein, "Defendant"):

## THE PARTIES

1.     Plaintiff Sony Corporation ("Sony") is a Japanese corporation with a principal place of business at 1-7-1, Konan, Minato-ku, Tokyo, Japan.

2.     Upon information and belief, LG Electronics U.S.A., Inc. ("LG Electronics USA") is a corporation organized under the laws of Delaware and with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. Upon information and belief, LG Electronics USA makes, imports into the United States, offers for sale, sells and/or uses in the United States products, including, without limitation, display devices.

## JURISDICTION AND VENUE

1.     This lawsuit is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

2.     LG Electronics USA is subject to personal jurisdiction in this Court because, on information and belief, it does and has done substantial business in this judicial District, including: (i) designating an agent for service of process in the State of California; (ii) committing acts of patent infringement and/or contributing to or inducing acts of patent infringement by others in this District and elsewhere in California and the United States; (iii) regularly doing business or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from products and/or services provided to individuals in this District and in this State; (iv) regularly receiving shipments of infringing

02347.51742/3959541.1

-2-

COMPLAINT FOR PATENT INFRINGEMENT

1    display devices in this District and in this State; and (v) participating in litigation

2    in this judicial District.

3         3.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391

4    and 1400(b) because Defendant regularly conducts business in this judicial district,

5    have regular and established places of business in this judicial district, and/or

6    because certain of the acts complained of herein occurred in this judicial district.

7         4.    Upon information and belief, LG Electronics is a parent corporation

8    and/or owns more than 10 percent of LG Electronics USA.

9         5.    A true and correct copy of a webpage retrieved on September 26,

10    2010 from http://www.lg.com/us/about-lg/corporate-information/overview/global-

11    operations.jsp?Area=Global|AP&Nation=KR is attached hereto as Exhibit A.

12         6.    A true and correct copy of a webpage retrieved on September 26,

13    2010 from http://www.lg.com/us/about-lg/corporate-information/overview/global-

14    operations.jsp?Area=Global|NA&Nation=US is attached hereto as Exhibit B.

15         7.    A true and correct copy of an excerpt of a search result for LG

16    ELECTRONICS as "Shipper" retrieved on October 12, 2010 from

17    http://www.importgenius.com is attached hereto as Exhibit C.

18         8.    A true and correct copy of an excerpt of a search result for LG

19    ELECTRONICS U.S.A. as "Consignee" retrieved on October 12, 2010 from

20    http://www.importgenius.com is attached hereto as Exhibit D.

21         9.    A true and correct copy of a document entitled LG Electronics Inc.

22    Interim Separate Financial Statements: June 30, 2010 and 2009 is attached hereto

23    as Exhibit E.

24         10.    A true and correct copy a webpage retrieved on September 26, 2010

25    from

26    http://lge.links.channelintelligence.com/oemsites/9939267/Maps/cii_lge_eu.asp?ci

27    i_nRadius=15&cii_nRuleGroupID=1144&cii_sCountry=US&cii_sZip=90012&cii

28    _sSKU=47SL80& is attached hereto as Exhibit F.

## THE PATENTS IN SUIT

11.    On July 18, 1995, the USPTO issued U.S. Patent No. 5,434,626 titled "Display Apparatus Displaying Operation Menu" (hereinafter "the '626 patent"). A true and correct copy of the '626 patent is attached hereto as Exhibit G.

12.    On May 12, 1998, the USPTO issued U.S. Patent No. 5,751,373 titled "Television Function Selection Method, Television Receiver and Remote Commander for Television Receiver" (hereinafter "the '373 patent"). A true and correct copy of the '373 patent is attached hereto as Exhibit H.

13.    On November 9, 2004, the USPTO issued U.S. Patent No. 6,816,131 titled "Single Horizontal Scan Range CRT Monitor" (hereinafter "the '131 patent"). A true and correct copy of the '131 patent is attached hereto as Exhibit I.

14.    On August 29, 2000, the USPTO issued U.S. Patent No. 6,111,614 titled "Method and Apparatus for Displaying an Electronic Menu having Components with Differing Levels of Transparency" (hereinafter "the '614 patent"). A true and correct copy of the '614 patent is attached hereto as Exhibit J.

15.    The '626 patent, '373 patent, '131 patent, and '614 patent collectively are henceforth referred to as the "patents-in-suit."

16.    Sony is the owner of all right, title, and interest in and to each of the patents-in-suit with full and exclusive right to bring suit to enforce this patent, including the right to recover for past infringement.

## COUNT I
## INFRINGEMENT OF THE '626 PATENT

17.    Sony realleges and incorporates herein the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

02347.51742/3959541.1

-4-

18.    Upon information and belief, in violation of 35 U.S.C. § 271, Defendant has infringed and is continuing to infringe, literally and/or under the doctrine of equivalents, the '626 patent by practicing one or more claims of the '626 patent in the manufacture, use, offering for sale, sale, and/or importation of display devices, digital televisions and monitors ("LG Products") including, for example, the LG 32LD350 LCD TV and LG E2360V LCD Monitor, which permit the display characteristics of unavailable items in a menu to be controlled. Sony reserves its right to contend that additional LG products infringe the '626 patent.

19.    Upon information and belief, in violation of 35 U.S.C. § 271, Defendant has infringed and is continuing to infringe the '626 patent by contributing to and/or actively inducing the infringement by others of the '626 patent by the manufacture, use, offering for sale, sale, and/or importation of the LG Products, including, for example, the LG 32LD350 LCD TV and LG E2360V LCD Monitor, which permit the display characteristics of unavailable items in a menu to be controlled, and which LG products are thereby especially adapted for infringing the '626 patent. Sony reserves its right to contend that additional LG products indirectly infringe the '626 patent. Upon information and belief, Defendant further actively induces others, including users of the LG products, to infringe the '626 patent through the sale of LG Products to customers along with directions, demonstrations, guides, and/or manuals that encourage the infringing use of the LG Products. True and correct copies of the Owner's Manuals for the LG 32LD350 LCD TV and the LG E2360V LCD Monitor are attached hereto as Exhibits K and L, respectively. Upon information and belief, Defendant knew or should have known its actions would cause direct infringement of the '626 patent and did so with intent to encourage direct infringement.

20.    Upon information and belief, Defendant's infringement of the '626 patent has been, and continues to be, willful, deliberate, and intentional as

COMPLAINT FOR PATENT INFRINGEMENT

1    Defendant continues its acts of infringement after being placed on notice of their
2    infringement, thus acting in reckless disregard of Sony's patent rights.

3        21.    Upon information and belief, Defendant's acts of infringement of the
4    '626 patent will continue after service of this complaint unless enjoined by the
5    Court.

6        22.    As a result of Defendant's infringement, Sony has suffered and will
7    suffer damages.

8        23.    Sony is entitled to recover from Defendant the damages sustained by
9    Sony as a result of Defendant's wrongful acts in an amount subject to proof at
10   trial.

11       24.    Unless Defendant is enjoined by this Court from continuing their
12   infringement of the '626 patent, Sony will suffer additional irreparable harm and
13   impairment of the value of its patent rights.  Thus, Sony is entitled to a preliminary
14   and permanent injunction against further infringement.

15

16                              **COUNT II**
17              **INFRINGEMENT OF THE '373 PATENT**

18

19       25.    Sony realleges and incorporates herein the allegations of the
20   preceding paragraphs of this Complaint as if fully set forth herein.

21       26.    Upon information and belief, in violation of 35 U.S.C. § 271,
22   Defendant has infringed and is continuing to infringe, literally and/or under the
23   doctrine of equivalents, the '373 patent by practicing one or more claims of the
24   '373 patent in the manufacture, use, offering for sale, sale, and/or importation of
25   the LG Products, including, for example, the LG 32LD350 LCD TV, which have
26   hierarchical on-screen menus that allow users to designate and select items that are
27   displayed in the menu.  Sony reserves its right to contend that additional LG
28   products infringe the '373 patent.

02347.51742/3959541.1

-6-

COMPLAINT FOR PATENT INFRINGEMENT

27.     Upon information and belief, in violation of 35 U.S.C. § 271, Defendant has infringed and is continuing to infringe the '373 patent by contributing to and/or actively inducing the infringement by others of the '373 patent by the manufacture, use, offering for sale, sale, and/or importation of the LG Products, including, for example, the LG 32LD350 LCD TV, which have hierarchical on-screen menus that allow users to designate and select items that are displayed in the menu, and which LG products are thereby especially adapted for infringing the '373 patent. Sony reserves its right to contend that additional LG products indirectly infringe the '373 patent. Upon information and belief, Defendant further actively induces others, including users of the LG products, to infringe the '373 patent through the sale of LG Products to customers along with directions, demonstrations, guides, and/or manuals that encourage the infringing use of the LG Products. Upon information and belief, Defendant knew or should have known their actions would cause direct infringement of the '373 patent and did so with intent to encourage direct infringement.

28.     Upon information and belief, Defendant's infringement of the '373 patent has been, and continues to be, willful, deliberate, and intentional as Defendant continues its acts of infringement after being placed on notice of their infringement, thus acting in reckless disregard of Sony's patent rights.

29.     Upon information and belief, Defendant's acts of infringement of the '373 patent will continue after service of this complaint unless enjoined by the Court.

30.     As a result of Defendant's infringement, Sony has suffered and will suffer damages.

31.     Sony is entitled to recover from Defendant the damages sustained by Sony as a result of Defendant's wrongful acts in an amount subject to proof at trial.

32.     Unless Defendant is enjoined by this Court from continuing their infringement of the '373 patent, Sony will suffer additional irreparable harm and impairment of the value of its patent rights. Thus, Sony is entitled to a preliminary and permanent injunction against further infringement.

## COUNT III
## INFRINGEMENT OF THE '131 PATENT

33.     Sony realleges and incorporates herein the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

34.     Upon information and belief, in violation of 35 U.S.C. § 271, Defendant has infringed and is continuing to infringe, literally and/or under the doctrine of equivalents, the '131 patent by practicing one or more claims of the '131 patent in the manufacture, use, offering for sale, sale, and/or importation of the LG Products, including, for example, the LG 32LD350 LCD TV and LG E2360V LCD Monitor, which can convert initial display signals having one of a plurality of input resolutions to digital output signals having a different resolution and the same horizontal frequency as the monitor. Sony reserves its right to contend that additional LG products infringe the '131 patent.

35.     Upon information and belief, in violation of 35 U.S.C. § 271, Defendant has infringed and is continuing to infringe the '131 patent by contributing to and/or actively inducing the infringement by others of the '131 patent by the manufacture, use, offering for sale, sale, and/or importation of the LG Products, including, for example, the LG 32LD350 LCD TV and LG E2360V LCD Monitor, which can convert initial display signals having one of a plurality of input resolutions to digital output signals having a different resolution and the same horizontal frequency as the monitor, and which LG products are thereby especially adapted for infringing the '131 patent. Sony reserves its right to

02347.51742/3959541.1

-8-

contend that additional LG products indirectly infringe the '131 patent. Upon information and belief, Defendant further actively induces others, including users of the LG products, to infringe the '131 patent through the sale of LG Products to customers along with directions, demonstrations, guides, and/or manuals that encourage the infringing use of the LG Products. Upon information and belief, Defendant knew or should have known their actions would cause direct infringement of the '131 patent and did so with intent to encourage direct infringement.

36.     Upon information and belief, Defendant's infringement of the '131 patent has been, and continues to be, willful, deliberate, and intentional as Defendant continue their acts of infringement after being placed on notice of their infringement, thus acting in reckless disregard of Sony's patent rights.

37.     Upon information and belief, Defendant's acts of infringement of the '131 patent will continue after service of this complaint unless enjoined by the Court.

38.     As a result of Defendant's infringement, Sony has suffered and will suffer damages.

39.     Sony is entitled to recover from Defendant the damages sustained by Sony as a result of Defendant's wrongful acts in an amount subject to proof at trial.

40.     Unless Defendant is enjoined by this Court from continuing their infringement of the '131 patent, Sony will suffer additional irreparable harm and impairment of the value of its patent rights. Thus, Sony is entitled to a preliminary and permanent injunction against further infringement.

COMPLAINT FOR PATENT INFRINGEMENT

## COUNT IV

### INFRINGEMENT OF THE '614 PATENT

41.    Sony realleges and incorporates herein the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

42.    Upon information and belief, in violation of 35 U.S.C. § 271, Defendant has infringed and is continuing to infringe, literally and/or under the doctrine of equivalents, the '614 patent by practicing one or more claims of the '614 patent in the manufacture, use, offering for sale, sale, and/or importation of the LG Products, including, for example, the LG 32LD350 LCD TV, which generate on-screen menu displays in which certain components of the menu display are more or less transparent than other components of the menu display. Sony reserves its right to contend that additional LG products infringe the '614 patent.

43.    Upon information and belief, in violation of 35 U.S.C. § 271, Defendant has infringed and is continuing to infringe the '614 patent by contributing to and/or actively inducing the infringement by others of the '614 patent by the manufacture, use, offering for sale, sale, and/or importation of the LG Products, including, for example, the LG 32LD350 LCD TV, which generate on-screen menu displays in which certain components of the menu display are more or less transparent than other components of the menu display, and which LG products are thereby especially adapted for infringing the '614 patent. Sony reserves its right to contend that additional LG products indirectly infringe the '614 patent. Upon information and belief, Defendant further actively induces others, including users of the LG products, to infringe the '614 patent through the sale of LG Products to customers along with directions, demonstrations, guides, and/or manuals that encourage the infringing use of the LG Products. Upon information and belief, Defendant knew or should have known their actions would

COMPLAINT FOR PATENT INFRINGEMENT

1   cause direct infringement of the '614 patent and did so with intent to encourage

2   direct infringement.

3       44.    Upon information and belief, Defendant's infringement of the '614

4   patent has been, and continues to be, willful, deliberate, and intentional as

5   Defendant continue their acts of infringement after being placed on notice of their

6   infringement, thus acting in reckless disregard of Sony's patent rights.

7       45.    Upon information and belief, Defendant's acts of infringement of the

8   '614 patent will continue after service of this complaint unless enjoined by the

9   Court.

10       46.    As a result of Defendant's infringement, Sony has suffered and will

11   suffer damages.

12       47.    Sony is entitled to recover from Defendant the damages sustained by

13   Sony as a result of Defendant's wrongful acts in an amount subject to proof at

14   trial.

15       48.    Unless Defendant is enjoined by this Court from continuing their

16   infringement of the '614 patent, Sony will suffer additional irreparable harm and

17   impairment of the value of its patent rights.  Thus, Sony is entitled to a preliminary

18   and permanent injunction against further infringement.

19

20                 **PRAYER FOR RELIEF**

21       WHEREFORE, Sony prays for the following relief:

22       (a)    That Defendant be ordered to pay damages adequate to

23   compensate Sony for Defendant's infringement of each of the patents-in-suit

24   pursuant to 35 U.S.C. § 284;

25       (b)    That Defendant be ordered to pay treble damages for willful

26   infringement of each of the patents-in-suit pursuant to 35 U.S.C. § 284;

27       (c)    That Defendant be ordered to pay attorneys' fees pursuant to 35

28   U.S.C. § 285 for its infringement of each of the patents-in-suit;

-11-

COMPLAINT FOR PATENT INFRINGEMENT

1    (d)    That Defendant, their officers, agents, servants, employees, and

2  those persons acting in active concert or in participation with them be enjoined from

3  further infringement of each of the patents-in-suit pursuant to 35 U.S.C. § 283;

4    (e)    That Defendant be ordered to pay prejudgment interest;

5    (f)    That Defendant be ordered to pay all costs associated with this

6  action; and

7    (g)    That Sony be granted such other and additional relief as the

8  Court deems just and proper.

9  DATED: February 9, 2011          Respectfully submitted,

10

11

12                                 By _____

13                                    Steven M. Anderson
                                      Rory S. Miller
14                                    QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
15

16                                    Attorneys for Plaintiff
                                      Sony Corporation
17

18

19

20

21

22

23

24

25

26

27

28

02347.51742/3959541.1

-12-

COMPLAINT FOR PATENT INFRINGEMENT

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all issues so triable.

DATED: February 9, 2011          Respectfully submitted,


By _____

Steven M. Anderson
Rory S. Miller
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Attorneys for Plaintiff
Sony Corporation

COMPLAINT FOR PATENT INFRINGEMENT

# EXHIBIT A



## Global Operations

LG Electronics plays an active role in world markets with its operative global business policy. As a result, LG Electronics controls 114 local subsidiaries worldwide, with roughly 82,000 executives and employees.

To locate any of LG Electronics' offices or subsidiaries, click the relevant region on the map below. If no data appears once you have selected your region, click Ask.

| Asia & Pacific | Korea (Headquarters) |
| --- | --- |



### Asia & Pacific

| | | |
| --- | --- | --- |
| Korea (Headquarters) | LG Electronics Changwon Digital Appliance company Production | 391-2, Gaemi-jeong-dong, Changwon City, Gyeongnam, 641-711, Korea 82-55-260-3114 82-55-260-3030 |
| Korea (Headquarters) | LG Electronics Cheongju Plant Production | LG Electronics Cheongju Plant, Hyangjeong-dong, Heungdeok-gu, Cheongju-si, Chungcheongbuk-do, 361-721 Korea 82-43-279-1114 82-43-279-3114 |
| Korea (Headquarters) | LG Electronics Gumi TV/DMT Plant Production | 642, Jinpyeong-Dong, Gumi City, Gyeongbuk, 730-792, Korea 82-54-470-1114 82-54-470-4711 |
| Korea (Headquarters) | LG Electronics Pyeongtaek Digital Park Production | 11-1, Cheongho-ri, Jinwi-myeon, Pyeongtaek-si, Gyeonggi-do, 451-713, Korea 82-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 82-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 |
| Korea (Headquarters) | LG Electronics Headquarters | LG Twin Towers 20, Yeido-dong, Yeongdeungpo-gu Seoul, Korea 150-721 82-2-3777-1114 |

 LG English

Contact Us | Sitemap | Partners | Buyers Guide | Jobs | LG Executives Partners | Commercial Solutions | Low Bandwidth Site | Public Notice | Privacy | Legal | Copyright 2010 LG Electronics. All Rights Reserved.

EXHIBIT A
PAGE 14

# EXHIBIT B





**LG**
Life's Good

Mobile Phones
TV / Audio / Video
Appliances
Computer Products

About LG

Support

Low Bandwidth

## Global Operations

LG Electronics plays an active role in world markets with its assertive global business policy. As a result, LG Electronics controls $14 local subsidiaries worldwide, with roughly 82,000 executives and employees.

To locate one of LG Electronics' offices or subsidiaries, click the relevant region on the map below. (The data appears once you have selected your region, click Act.

North America | United States



**North America**

| United States | LG U.S.A. Electronics U.S.A., Inc. Marketing | 1000 Sylvan Avenue Englewood Cliffs, New Jersey, U.S.A. 07632, U.S.A. 201-816-2000 201-816-0636 |

U.S. English    Contact Us / Sitemap | Privacy | Brand Guide | Jobs | LG Security Program | Commercial Commerce
Low Bandwidth Site | Public Notice | Private | Email | Copyright 2010 LG Electronics. All Rights Reserved.

EXHIBIT __B__

PAGE __15__

# EXHIBIT C

EXHIBIT C

PAGE 16

EXHIBIT C
PAGE 17

ImportGenius

EXHIBIT C

PAGE 18

EXHIBIT C

PAGE 19

EXHIBIT C
PAGE 20

| Part Description | Consignee | Shipper | Bill of Lading | Quantity | Weight | Port |
|---|---|---|---|---|---|---|
| LCD MONITOR | RMB SURGICAL TRADING, LLC | LG ELECTRONICS INC | | 3,375 | 7 CTNS | PUSAN |
| LCD MONITOR | LG ELECTRONICS PANAMA S.A II US | LG ELECTRONICS INC | | | 1 UNIT | SHANGHAI | LONG BEACH, CALIFOR; HANJIN PANAMA |
| LCD MONITORED MONITOR | LG ELECTRONICS CORPORATION | LG ELECTRONICS INC | 2010-0292 | 24,918 | 2,045 CTN | SHANGHAI | LONG BEACH, CALIFOR | CHINA |
| S OTHER LEADED MONITOR 8 LCD MONITOR | SONY LATIN AMERICA INC (SLA) | LG ELECTRONICS INC | | 7,595 | 8 PCS | PUSAN | | 24K CHU YUNGI |
| LCD MONITOR | LG ELECTRONICS PANAMA S.A II US | LG ELECTRONICS INC | | 7,595 | 92 CTN | SHANGHAI | LONG BEACH, CALIFOR | CHINA |
| LCD MONITOR | LG ELECTRONICS CORPORATION | LG ELECTRONICS INC | 2010-0193 | | -1,597 CTN | PUSAN | LONG BEACH, CALIFOR; HANJIN LONG BEACH | CHINA |
| PART OF LCD TV | LG ELECTRONICS DA AMAZONIA LTDA | LG ELECTRONICS INC | | 1443 | 3 CTN | PUSAN | LONG BEACH, CALIFOR; HANJIN LONG BEACH | SOUTH KOREA |
| PART OF LCD TV | LG ELECTRONICS DA AMAZONIA LTDA | LG ELECTRONICS INC | 2010-0183 | | 3 CTN | PUSAN | LONG BEACH, CALIFOR; HANJIN LONG BEACH | SOUTH KOREA |
| PART OF LCD TV | LG ELECTRONICS DA AMAZONIA LTDA | LG ELECTRONICS INC | 2010-0183 | 7,000 | 1 CTN | PUSAN | LONG BEACH, CALIFOR; HANJIN LONG BEACH | SOUTH KOREA |
| PART OF LCD TV | LG ELECTRONICS DA AMAZONIA LTDA | LG ELECTRONICS INC | | 800 | 4 CTN | PUSAN | LONG BEACH, CALIFOR; HANJIN LONG BEACH | SOUTH KOREA |
| PART OF LCD TV | LG ELECTRONICS DA AMAZONIA LTDA | LG ELECTRONICS INC | | 100 | 1 CTN | PUSAN | LONG BEACH, CALIFOR; HANJIN LONG BEACH | SOUTH KOREA |
| PART OF LCD TV | LG ELECTRONICS DA AMAZONIA LTDA | LG ELECTRONICS INC | | K258 | 8 CTN | PUSAN | LONG BEACH, CALIFOR; HANJIN LONG BEACH | SOUTH KOREA |
| PART OF LCD TV | LG ELECTRONICS DA AMAZONIA LTDA | LG ELECTRONICS INC | | 7,350 | 2 CTN | PUSAN | LONG BEACH, CALIFOR; HANJIN LONG BEACH | SOUTH KOREA |
| PART OF LCD TV | LG ELECTRONICS DA AMAZONIA LTDA | LG ELECTRONICS INC | | 244 | 4 CTN | PUSAN | LONG BEACH, CALIFOR; HANJIN LONG BEACH | SOUTH KOREA |

# EXHIBIT D

EXHIBIT D
PAGE 21

EXHIBIT D
PAGE 22

EXHIBIT D

PAGE 23

EXHIBIT D

PAGE 24

# EXHIBIT E

# LG Electronics Inc.
**Interim Separate Financial Statements**
**June 30, 2010 and 2009**

EXHIBIT _E_

PAGE _25_



**LG Electronics Inc.**
Index

| | Page(s) |
|---|---|
| Auditors' Review Report .................................................................. | 1 - 2 |
| **Interim Separate Financial Statements** | |
| Interim Statements of Financial Position ....................................... | 3 |
| Interim Income Statements ........................................................... | 4 |
| Interim Statements of Comprehensive Income .............................. | 4 |
| Interim Statements of Changes in Shareholders' Equity ............... | 5 |
| Interim Statements of Cash Flows ................................................ | 6 |
| Notes to the Interim Separate Financial Statements ..................... | 7 - 53 |

EXHIBIT _E_

PAGE _26_

RESPECTED
TRUSTED **SAMIL** 
PROFESSIONAL

*PRICEWATERHOUSE COOPERS*

**Auditors' Review Report**

To the Board of Directors and Shareholders of
LG Electronics Inc.

We have reviewed the accompanying interim separate statement of financial position of LG Electronics Inc. (the "Company") as of June 30, 2010, and the related separate income statements, statements of comprehensive income for the three-month and six-month periods ended June 30, 2010, and changes in shareholders' equity and cash flows for the six-month period ended June 30, 2010, expressed in Korean won. These interim separate financial statements are the responsibility of the Company's management. Our responsibility is to issue a report on these interim separate financial statements based on our review. We have not reviewed the interim separate income statements and statements of comprehensive income for the three-month and six-month periods ended June 30, 2009, and changes in shareholders' equity and cash flows for the six-month period ended June 30, 2009, presented herein for comparative purposes.

We conducted our review in accordance with semi-annual review standards established by the Securities and Futures Commission of the Republic of Korea. These standards require that we plan and perform our review to obtain moderate assurance as to whether the financial statements are free of material misstatement. A review is limited primarily to inquiries of company personnel and analytical procedures applied to financial data and thus provide less assurance than an audit. We have not performed an audit and, accordingly, we do not express an audit opinion.

Based on our review, nothing has come to our attention that causes us to believe that the interim separate financial statements referred to above are not presented fairly, in all material respects, in accordance with International Financial Reporting Standards as adopted by the Republic of Korea ("Korean IFRS").

We reviewed the non-consolidated income statements and statements of comprehensive income for the three-month and six-month periods ended June 30, 2009, and changes in shareholders' equity and cash flows for the six-month period ended June 30, 2009 in accordance with accounting standards generally accepted in the Republic of Korea (not Korean IFRS). Based on our review opinion dated August 7, 2009, we stated that nothing had come to our attention that caused us to believe that the non-consolidated interim financial statements referred to above were not presented fairly, in all material respects, in accordance with accounting principles generally accepted in the Republic of Korea. These non-consolidated interim financial statements are not included in this review report.

Samil PricewaterhouseCoopers
LS Yongsan Tower. 191, Hangangno 2-ga, Yongsan-gu, Seoul 140-702, Korea (Yongsan P.O Box 266, 140-600) www.samil.com

Samil PricewaterhouseCoopers is the Korean network firm of PricewaterhouseCoopers International Limited (PwCIL). "PricewaterhouseCoopers" and "PwC" refer to the network of member firms of PwCIL. Each member firm is a separate legal entity and does not act as an agent of PwCIL or any other member firm.

EXHIBIT _E_

PAGE _27_

Without qualifying our opinion, we draw attention that the Company has adopted early the Korean IFRS on January 1, 2010, as explained in Note 2. These interim separate financial statements have been prepared in accordance with Korean IFRS issued and effective or issued and early adopted at the reporting date.

*Samil PricewaterhouseCoopers*

Seoul, Korea
August 23, 2010

This review report is effective as of August 23, 2010, the review report date. Certain subsequent events or circumstances, which may occur between the review report date and the time of reading this report, could have a material impact on the accompanying interim separate financial statements and notes thereto. Accordingly, the readers of the review report should understand that there is a possibility that the above review report may have to be revised to reflect the impact of such subsequent events or circumstances, if any.

2

EXHIBIT _E_

PAGE _28_

 

**LG Electronics Inc.**
Interim Separate Statements of Financial Position
June 30, 2010 and December 31, 2009

| (in millions of Korean won) | Note | June 30, 2010 | December 31, 2009 |
|---|---|---|---|
| **Assets** | | | |
| **Current assets** | | | |
| Cash and cash equivalents | 23 | 716,276 | 769,966 |
| Financial deposits | 23 | 13,000 | 223,000 |
| Trade receivables | 4, 22 | 6,982,838 | 5,154,589 |
| Loans and other receivables | | 313,418 | 321,131 |
| Inventories | | 1,184,380 | 767,019 |
| Current income tax assets | | 2,169 | - |
| Other current assets | | 530,134 | 435,989 |
| | | 9,742,215 | 7,891,694 |
| **Non-current assets** | | | |
| Financial deposits | | 29,087 | 23,023 |
| Loans and other receivables | | 344,409 | 339,784 |
| Other financial assets | | 85,633 | 82,707 |
| Property, plant and equipment | 5, 21 | 4,558,805 | 4,657,140 |
| Intangible assets | 5, 21 | 721,633 | 685,917 |
| Deferred income tax assets | | 90,511 | |
| Investments in subsidiaries, jointly controlled entities and associates | 6 | 7,909,350 | 7,897,109 |
| Investment property | | 9,932 | 10,020 |
| Other non-current assets | | 738,747 | 755,816 |
| | | 14,487,907 | 14,451,516 |
| **Total assets** | | 24,230,122 | 22,143,210 |
| **Liabilities** | | | |
| **Current liabilities** | | | |
| Trade payables | 22 | 4,925,281 | 3,819,977 |
| Borrowings | 7, 23 | 2,593,875 | 1,504,573 |
| Other payables | | 2,406,475 | 2,534,486 |
| Other financial liabilities | | - | 61,722 |
| Current income tax liabilities | | - | 57,088 |
| Provisions | 8 | 176,663 | 196,890 |
| Other current liabilities | | 590,407 | 493,694 |
| | | 10,692,701 | 8,668,430 |
| **Non-current liabilities** | | | |
| Borrowings | 7, 23 | 2,363,014 | 1,953,613 |
| Other financial liabilities | | 54,924 | 55,183 |
| Deferred income tax liabilities | | - | 48,216 |
| Defined benefit liability | 9 | 197,858 | 203,280 |
| Provisions | 8 | 338,346 | 326,533 |
| | | 2,954,142 | 2,586,825 |
| **Total liabilities** | | 13,646,843 | 11,255,255 |
| **Equity** | | | |
| **Paid-in capital** | | | |
| Capital stock | | 809,169 | 809,169 |
| Share premium | | 2,207,919 | 2,207,919 |
| Retained earnings | 10 | 7,587,704 | 7,892,549 |
| Accumulated other comprehensive income | | 11,306 | 11,137 |
| Other components of equity | 11 | (32,819) | (32,819) |
| **Total equity** | | 10,583,279 | 10,887,955 |
| **Total liabilities and equity** | | 24,230,122 | 22,143,210 |

The accompanying notes are an integral part of these interim separate financial statements.

3

EXHIBIT _E_

PAGE _29_

 

## LG Electronics Inc.
### Interim Separate Income Statements and Statements of Comprehensive Income
### Three-Month and Six-Month Periods Ended June 30, 2010 and 2009

| (In millions of Korean won, except per share amounts) | Note | 2010 | | 2009 (Unreviewed) | |
|---|---|---|---|---|---|
| | | Three-Month | Six-Month | Three-Month | Six-Month |
| Net sales | 12, 22 | 7,853,107 | 14,880,444 | 8,477,122 | 15,551,219 |
| Cost of sales | 13, 22 | 6,441,404 | 12,279,309 | 6,290,608 | 11,692,199 |
| Gross profit | | 1,211,703 | 2,601,135 | 2,186,514 | 3,859,020 |
| Selling and marketing expenses | 13,14 | 818,365 | 1,512,674 | 837,155 | 1,536,995 |
| Administrative expenses | 13,14 | 151,978 | 272,618 | 118,728 | 226,407 |
| Research and development expenses | 13,14 | 361,295 | 682,844 | 318,557 | 606,375 |
| Service expenses | 13,14 | 111,600 | 219,005 | 176,511 | 310,094 |
| Other operating income | 15 | 529,331 | 767,044 | 395,908 | 1,200,971 |
| Other operating expenses | 13, 16 | 510,582 | 800,408 | 357,768 | 1,123,905 |
| Operating income (loss) | | (212,786) | (119,370) | 761,703 | 1,254,215 |
| Financial income | | 148,701 | 399,934 | 369,179 | 924,660 |
| Financial expenses | | 330,880 | 439,231 | 127,766 | 1,033,978 |
| Profit (loss) before income tax | | (394,965) | (158,667) | 1,003,116 | 1,145,097 |
| Income tax expense (income) | | (144,025) | (136,735) | 227,970 | 264,065 |
| Profit (loss) for the period | | (250,940) | (21,932) | 775,146 | 881,032 |
| Earnings (loss) per share during the period (in won) | | | | | |
| Earnings (loss) per share | 17 | (1,559) | (139) | 4,811 | 5,467 |

| (In millions of Korean won) | Note | 2010 | | 2009 (Unreviewed) | |
|---|---|---|---|---|---|
| | | Three-Month | Six-Month | Three-Month | Six-Month |
| Profit (loss) for the period | | (250,940) | (21,932) | 775,146 | 881,032 |
| Other comprehensive income | | | | | |
| Available-for-sale financial assets | | 1,249 | 169 | 816 | 4,269 |
| Actuarial gain (loss) on defined benefit liability | 9 | (227) | (188) | 917 | 1,827 |
| Other comprehensive income for the period, net of tax | | 1,022 | (19) | 1,733 | 6,096 |
| Total comprehensive income(loss) for the period | | (249,918) | (21,951) | 776,879 | 887,128 |

The accompanying notes are an integral part of these interim separate financial statements.

4

EXHIBIT _E_

PAGE _30_

**LG Electronics Inc.**

Interim Separate Statements of Changes in Shareholders' Equity

Six-Month Periods Ended June 30, 2010 and 2009

| (in millions of Korean won) | Note | Paid-in Capital | Retained Earnings | Accumulated Other Comprehensive Income | Other Components of Equity | Total |
|---|---|---|---|---|---|---|
| Balance at January 1, 2009 | | 3,017,088 | 8,804,163 | 4,235 | (32,819) | 9,792,667 |
| Comprehensive income | | | | | | |
| Profit for the period | | - | 881,032 | - | - | 881,032 |
| Actuarial gain on defined benefit liability | 9 | - | 1,827 | - | - | 1,827 |
| Available-for-sale financial assets | | - | - | 4,269 | - | 4,269 |
| Dividends | 18 | - | (57,232) | - | - | (57,232) |
| Balance at June 30, 2009 (Unreviewed) | | 3,017,088 | 7,629,790 | 8,504 | (32,819) | 10,622,563 |
| Balance at January 1, 2010 | | 3,017,088 | 7,892,549 | 11,137 | (32,819) | 10,887,955 |
| Comprehensive income | | | | | | |
| Loss for the period | | - | (21,932) | - | - | (21,932) |
| Actuarial loss on defined benefit liability | 9 | - | (188) | - | - | (188) |
| Available-for-sale financial assets | | - | - | 169 | - | 169 |
| Dividends | 18 | - | (282,725) | - | - | (282,725) |
| Balance at June 30, 2010 | | 3,017,088 | 7,587,704 | 11,306 | (32,819) | 10,583,279 |

The accompanying notes are an integral part of these interim separate financial statements.

5

EXHIBIT _E_

PAGE _31_

**LG Electronics Inc.**

Interim Separate Statements of Cash Flows
Six-Month periods Ended June 30, 2010 and 2009

| (In millions of Korean won) | Note | Six-Month Period Ended June 30 | |
| --- | --- | --- | --- |
| | | 2010 | 2009 (Unreviewed) |
| **Cash flows from operating activities** | | | |
| Cash generated from operations | 19 | (1,075,622) | 1,461,830 |
| Interest received | | 21,548 | 15,338 |
| Interest paid | | (64,699) | (110,100) |
| Dividends received | | 91,250 | 131,319 |
| Income tax expense paid | | (63,051) | (125,290) |
| Net cash generated (used) from operating activities | | (1,090,574) | 1,373,097 |
| **Cash flows from investing activities** | | | |
| Decrease in financial deposits | | 203,936 | 48,875 |
| Decrease in loans and other receivables | | 31,115 | 41,548 |
| Proceeds from disposal of other financial assets | | 68,339 | 30,703 |
| Proceeds from disposal of investments in subsidiaries, jointly controlled entities and associates | | 120,027 | - |
| Proceeds from disposal of property, plant and equipment | | 12,813 | 60,995 |
| Proceeds from disposal of intangible assets | | 170 | 5,220 |
| Decrease in other assets | | 88 | 438 |
| Increase in loans and other receivables | | (36,205) | (43,474) |
| Acquisition of other financial assets | | (83,690) | (102,221) |
| Acquisition of investments in subsidiaries, jointly controlled entities and associates | | (132,268) | (43,663) |
| Acquisition of property, plant and equipment | | (170,461) | (213,402) |
| Acquisition of intangible assets | | (113,813) | (58,670) |
| Net cash used in investing activities | | (99,949) | (273,651) |
| **Cash flows from financing activities** | | | |
| Proceeds from borrowings | | 2,126,158 | 568,582 |
| Repayments of borrowings | | (726,600) | (1,567,846) |
| Dividends paid | | (282,725) | (57,232) |
| Net cash provided by (used in) financing activities | | 1,116,833 | (1,056,516) |
| Net increase (decrease) in cash and cash equivalents | | (73,690) | 42,930 |
| Cash and cash equivalents at the beginning of period | | 789,966 | 1,156,845 |
| Cash and cash equivalents at the end of period | | 716,276 | 1,199,675 |

The accompanying notes are an integral part of these interim separate financial statements.

6

EXHIBIT _____E_____

PAGE _____32_____

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

## 1. General Information

LG Electronics Inc. (the "Company") was spun-off from LG Electronics Investment Ltd. on April 1, 2002, to engage in the manufacture and sale of electronic, information and communication products. The Company's shares are listed on the Korea Exchange and some of its preferred shares, in form of global depositary receipts ("DRs"), are listed on the London Stock Exchange as of the reporting date. The Company is domiciled in Korea at Yeouido-dong, Yeungdeungpo-gu, Seoul.

The Company is engaged in the manufacture and sale of electronic, information and communication products including mobile phones, TVs, air conditioners, refrigerators, washing machines, personnel computers and its core parts. As of June 30, 2010, the Company operates manufacturing facilities mainly in Pyeongtaek, Changwon, Cheongju and Gumi in the Republic of Korea.

As of June 30, 2010, LG Corp. and its related parties own 34.8% of the Company's total shares, excluding preferred shares, while financial institutions, foreign investors and others own the rest.

## 2. Significant Accounting Policies

The principal accounting policies applied in the preparation of these interim separate financial statements are set out below. These policies have been consistently applied to all the periods presented, unless otherwise stated.

**Basis of Preparation**

The financial statements are prepared in accordance with International Financial Reporting Standards as adopted by the Republic of Korea ("Korean IFRS"). These are the standards, subsequent amendments and related interpretations issued by the International Accounting Standards Board ("IASB") that have been adopted by the Republic of Korea.

The non-consolidated financial statements of the Company were prepared in accordance with accounting principles generally accepted in the Republic of Korea ("K-GAAP"). The Company's Korean IFRS transition date according to Korean IFRS 1101, *'First-time Adoption of Korean IFRS'*, is January 1, 2009, and reconciliations and descriptions of the effect of the transition from K-GAAP to Korean IFRS on the Company's equity, its comprehensive income and cash flows are provided in Note 24.

The interim separate financial statements for the six-month period ended June 30, 2010, have been prepared in accordance Korean IFRS 1034, *'Interim Financial Reporting'*, and are subject to Korean IFRS 1101, *'First-time Adoption of Korean IFRS'*. These interim separate financial statements have been prepared in accordance with the Korean IFRS standards and interpretations issued and effective or issued and early adopted at the reporting date. The Korean IFRS standards and interpretations that will be applicable at December 31, 2010,

7

EXHIBIT _E_

PAGE _33_



**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

including those that will be applicable on an optional basis, are not known with certainty at the time of preparing these interim separate financial statements.

The preparation of interim separate financial statements in accordance with Korean IFRS 1034 requires the use of certain critical accounting estimates. It also requires management to exercise judgement in the process of applying the Company's accounting policies. The areas involving a higher degree of judgement or complexity, or areas where assumptions and estimates are significant to the separate financial statements, are disclosed in Note 3.

**Investments in Subsidiaries, Jointly Controlled Entities and Associates**

The attached statements are the separate financial statements subject to Korean IFRS 1027, 'Consolidated and Separate Financial Statements', and are those presented by a parent. The investments in subsidiaries, associates or jointly controlled entities are recorded at acquisition cost on the basis of the direct equity interest. As of the date of transition to Korean IFRS, K-GAAP carrying amount at the transition date is used as its deemed cost. The Company recognises a dividend from a subsidiary, jointly controlled entity or associate in profit or loss when its right to receive the dividend is established.

**Segment Reporting**

Operating segments are established on the basis of business divisions whose internal reporting is provided to the chief operating decision-maker who is the chief executive officer. The information of the operating segments is disclosed in Note 4 to the interim consolidated financial statements, subject to Korean IFRS 1108, 'Operating Segments'.

**Foreign Currency Translation**

The Company's functional and presentation currency is 'Korean won'. Foreign currency transactions are translated into the functional currency using the exchange rates prevailing at the dates of the transactions or valuation where items are re-measured. Foreign exchange gains and losses resulting from the settlement of such transactions and from the translation at each reporting date exchange rates of monetary assets and liabilities denominated in foreign currencies are recognised in the income statement.

Foreign exchange gains and losses that relate to borrowings and cash and cash equivalents are reported in 'financial income and expenses' in the separate income statement. All other foreign exchange gains and losses are reported in 'other operating income and expenses' in the separate income statement.

Changes in the fair value of monetary securities denominated in foreign currency classified as available-for-sale are analysed between translation differences resulting from changes in the amortised cost of the security and other changes in the carrying amount of the security. Translation differences related to changes in amortised cost are recognised in profit or loss, and other changes in carrying amount are recognised in equity.

8

EXHIBIT E

PAGE 34

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

Translation differences on non-monetary financial assets and liabilities such as equities held at fair value through profit or loss are recognised in the income statement as part of the fair value gain or loss. Translation differences on non-monetary financial assets such as equities classified as available-for-sale are included in the equity.

**Cash and Cash Equivalents**

Cash and cash equivalents include cash in hand, deposits held at call with banks, and other short-term highly liquid investments with original maturities less than three months.

**Financial Instruments**

(a) *Classification*

The Company classifies its financial assets in the following categories: financial assets and liabilities at fair value through profit or loss, loans and receivables, available-for-sale financial assets, held-to-maturity investment, and other financial liabilities at amortised cost. The classification depends on the purpose for which the financial assets were acquired and the nature of the instruments. Management determines the classification of its financial assets at initial recognition.

i)   Financial assets and liabilities at fair value through profit or loss

Financial assets and liabilities at fair value through profit or loss are financial instruments held for trading. Financial assets and liabilities are classified in this category if acquired or incurred principally for the purpose of selling or repurchasing it in the near term. Derivatives that are not subject to hedge accounting and financial instruments having embedded derivatives are also included in this category. The Company's financial assets and liabilities at fair value through profit or loss comprise 'other financial assets' and 'other financial liabilities'.

ii)   Loans and receivables

Loans and receivables are non-derivative financial assets with fixed or determinable payments that are not quoted in an active market. They are included in current assets, except for maturities greater than 12 months after the end of the reporting period. These are classified as non-current assets. The Company's loans and receivables comprise 'cash and cash equivalents', 'financial deposits', 'trade receivables', 'loans and other receivables'.

iii)   Held-to-maturity investments

Held-to-maturity financial assets are non-derivative financial assets with fixed or determinable payments and fixed maturities that the Company's management has the positive intention and ability to hold to maturity and are classified as 'other financial assets' in the separate statement of financial position. If the Company were to sell other than an insignificant amount of held-to-maturity financial assets, the whole category would be tainted and reclassified as available-for-

9

EXHIBIT _E_

PAGE _35_



## LG Electronics Inc.
### Notes to the Interim Separate Financial Statements
### June 30, 2010 and 2009, and December 31, 2009

sale. Held-to-maturity financial assets are included in non-current assets, except for those with maturities less than 12 months after the end of the reporting period, which are classified as current assets.

#### iv) Available-for-sale financial assets

Available-for-sale financial assets are non-derivative financial assets that are either designated in this category or not classified in any of the other categories. They are included in 'other financial assets' as non-current assets unless maturities are less than 12 months or management intends to dispose of within 12 months after the end of the reporting period.

#### v) Financial liabilities measured at amortised cost

The Company classifies non-derivative financial liabilities as financial liabilities measured at amortised cost except for financial liabilities at fair value through profit or loss or financial liabilities that arise when a transfer of a financial asset does not qualify for derecognition. In this case the transferred asset continues to be recognised and a financial liability is measured at the consideration received. Financial liabilities measured at amortised cost are included in non-current liabilities, except for maturities less than 12 months after the end of the reporting period, which are classified as current liabilities.

#### (b) Recognition and Measurement

Regular purchases and sales of financial assets are recognised on the trade date. Investments are initially recognised at fair value plus transaction costs for all financial assets not carried at fair value through profit or loss. Financial assets carried at fair value through profit or loss are initially recognised at fair value, and transaction costs are expensed in the separate income statement. Financial assets are derecognised when the rights to receive cash flows from the investments have expired or have been transferred and the Company has transferred substantially all risks and rewards of ownership. Available-for-sale financial assets and financial assets at fair value through profit or loss are subsequently carried at fair value. Loans and receivables are subsequently carried at amortised cost using the effective interest method.

Gains or losses arising from changes in the fair value of the financial assets carried at fair value through profit or loss are presented in the separate income statement within 'financial income and expenses' in the period in which they arise. The Company recognises a dividend from financial assets at fair value through profit or loss in the separate income statement when its right to receive the dividend is established.

When securities classified as available-for-sale are sold or impaired, the accumulated fair value adjustments recognised in equity are reported in the separate income statement as 'financial income and expenses'.

Interest on available-for-sale securities calculated using the effective interest method is recognised in the separate income statement as part of 'financial income'. Dividends on

10

EXHIBIT ___E___

PAGE ___36___

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

available-for-sale equity instruments are recognised in the separate income statement as part of 'financial income' when the Company's right to receive the dividend is established.

**Impairment of Financial Assets**

(a) Assets carried at amortised cost

The Company assesses at the end of each reporting period whether there is objective evidence that a financial asset or a group of financial assets is impaired. A financial asset or a group of financial assets is impaired and impairment losses are incurred only if there is objective evidence of impairment as a result of one or more events that occurred after the initial recognition of the asset (a 'loss event') and that loss event (or events) has an impact on the estimated future cash flows of the financial asset or a group of financial assets that can be reliably estimated.

The criteria that the Company uses to determine that there is objective evidence of an impairment loss include:

- Significant financial difficulty of the issuer or obligor;
- A breach of contract, such as a default or delinquency in interest or principal payments;
- For economic or legal reasons relating to the borrower's financial difficulty, granting to the borrower a concession that the lender would not otherwise consider;
- It becomes probable that the borrower will enter bankruptcy or other financial reorganisation;
- The disappearance of an active market for that financial asset because of financial difficulties; or
- Observable data indicating that there is a measurable decrease in the estimated future cash flows from a portfolio of financial assets since the initial recognition of those assets, although the decrease cannot yet be identified with the individual financial assets in the portfolio, including:
    (i) adverse changes in the payment status of borrowers in the portfolio;
    (ii) national or local economic conditions that correlate with defaults on the assets in the portfolio.

The amount of the loss is measured as the difference between the asset's carrying amount and the present value of estimated future cash flows (excluding future credit losses that have not been incurred) discounted at the financial asset's original effective interest rate. The asset's carrying amount of the asset is reduced and the amount of the loss is recognised in the income statement. As a practical expedient, the Company may measure impairment on the basis of an instrument's fair value using an observable market price.

If, in a subsequent period, the amount of the impairment loss decreases and the decrease can be related objectively to an event occurring after the impairment was recognised (such as an improvement in the debtor's credit rating), the reversal of the previously recognised impairment loss is recognised in the income statement.

11

EXHIBIT _E_

P^nE _37_

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

(b)  Assets classified as available-for-sale

The Company assesses at the each reporting date whether there is an objective evidence that a financial asset or a group of financial assets is impaired. For debt securities, the Company uses the criteria refer to (a) above. In the case of equity investments classified as available-for-sale, a significant or prolonged decline in the fair value of the security below its cost is also evidence that the assets are impaired. If any such evidence exists for available-for-sale financial assets, the cumulative loss – measured as the difference between the acquisition cost and the current fair value, less any impairment loss on that financial asset previously recognised in profit or loss – is removed from equity and recognised in the income statement. Impairment losses recognised in the income statement on equity instruments are not reversed through the income statement. If, in a subsequent period, the fair value of a debt instrument classified as available-for-sale increases and the increase can be objectively related to an event occurring after the impairment loss was recognised in profit or loss, the impairment loss is reversed through the income statement.

**Derivative Financial Instruments**

Derivatives are initially recognised at fair value on the date a derivative contract is entered into and are subsequently re-measured at their fair value. When hedge does not meet the criteria for hedge accounting, changes in fair value of those are recognised typically to the separate income statement within 'other operating income and expenses' or 'financial income and expenses' according to the nature of transactions.

**Trade Receivables**

Trade receivables are amounts due from customers for merchandise sold or services performed in the ordinary course of business. If collection is expected in one year or less, they are classified as current assets. If not, they are presented as non-current assets. Trade receivables are recognised initially at fair value, less provision for impairment.

**Inventories**

Inventories are stated at the lower of cost and net realisable value. Cost is determined using the weighted-average method, except for inventories in-transit which are determined using the specific identification method. The cost of finished goods and work in progress comprises raw materials, direct labour, other direct costs and related production overheads (based on normal operating capacity). It excludes borrowing costs. Net realisable value is the estimated selling price in the ordinary course of business, less applicable variable selling expenses.

**Property, Plant and Equipment**

All property, plant and equipment are stated at historical cost less depreciation except for certain land which was measured at fair value as deemed cost. Historical cost includes expenditures directly attributable to the acquisition of the items.

12

EXHIBIT _E_

PAGE _38_

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

Subsequent costs are included in the asset's carrying amount or recognised as a separate asset, as appropriate, only when it is probable that future economic benefits associated with the item will flow to the Company and the cost of the item can be measured reliably. The carrying amount of the replaced part is derecognised. All other repairs and maintenance are charged to the separate income statement during the financial period in which they are incurred.

Land is not depreciated. Depreciation on other assets is calculated using the straight-line method to allocate the difference between their cost and their residual values over their estimated useful lives, as follows:

| | |
|---|---|
| Buildings | 20 - 40 years |
| Structures | 20 - 40 years |
| Machinery | 5 - 10 years |
| Vehicles | 5 years |
| Tools | 1 - 5 years |
| Equipment | 5 years |
| Others | 5 years. |

The assets' residual values and useful lives are reviewed, and adjusted if appropriate, at the each reporting date. An asset's carrying amount is written down immediately to its recoverable amount if the asset's carrying amount is greater than its estimated recoverable amount. Gains and losses on disposals are determined by comparing the proceeds with the carrying amount and are recognised within 'other operating income and expenses' in the separate income statement.

**Borrowing Costs**

The Company capitalises borrowing costs directly attributable to the acquisition or construction of qualifying asset as part of the cost of that asset during an extended period in which it prepares an asset for its intended use. The Company recognises other borrowing costs as an expense in the period incurred.

**Government Grants**

Grants from the government are recognised at their fair value where there is a reasonable assurance that the grant will be received and the Company will comply with all attached conditions.

Government grants relating to costs are deferred and recognised in the separate income statement to match them with the costs they are intended to compensate.

Government grants relating to property, plant and equipment are presented as a deduction of related assets and are credited to depreciation over the expected lives of the related assets.

13

EXHIBIT _E_

PAGE _39_

 

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

**Intangible Assets**

(a) *Goodwill*

Goodwill represents the excess of the aggregate of the consideration transferred and the acquisition-date fair value of the Company's previously held equity interest in the acquiree over the net identifiable assets at the date of acquisition. Goodwill is tested annually for impairment and carried at cost less accumulated impairment losses. Impairment losses on goodwill are not reversed.

(b) *Industrial property rights*

Industrial property rights are shown at historical cost. Industrial property rights have a finite useful life and are carried at cost less accumulated amortisation. Amortisation is calculated using the straight-line method to allocate the cost of industrial property rights over their estimated useful lives of five to ten years.

(c) *Development costs*

Development costs which are individually identifiable and directly related to a new technology or to new products which carry probable future benefits are capitalised as intangible assets. Amortisation of development costs based on the straight-line method over their estimated useful lives of one to five years begins at the commencement of the commercial production of the related products or use of the related technology.

(d) *Other intangible assets*

Other intangible assets such as software which meet the definition of an intangible asset are amortised using the straight-line method over their estimated useful lives of five years when the asset is available for use. Membership rights are regarded as intangible assets with indefinite useful life and not amortised because there is no foreseeable limit to the period over which the asset is expected to generate net cash inflows for the entity. All membership rights are tested annually for impairment and stated at cost less accumulated impairment. Impairment losses are not reversed.

**Research and Development Costs**

Costs associated with research are recognised as an expense as incurred. Costs that are identifiable, controllable and directly attributable to development projects are recognised as intangible assets when all the following criteria are met:

- It is technically feasible to complete the intangible asset so that it will be available for use;

- Management intends to complete the intangible asset and use or sell it;

- There is the ability to use or sell the intangible asset;

14

EXHIBIT _E_

PAGE _40_

 

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

- It can be demonstrated how the intangible asset will generate probable future economic benefits;

- Adequate technical, financial and other resources to complete the development and to use or sell the intangible asset are available; and

- The expenditure attributable to the intangible asset during its development can be reliably measured.

Other development expenditures that do not meet these criteria are recognised as an expense as incurred. Development costs previously recognised as an expense are not recognised as an asset in a subsequent period. Capitalised development costs which are stated as intangible assets are amortised using the straight-line method when the assets are available for use and are tested for impairment.

**Investment Property**

Investment property is held to earn rentals or for capital appreciation or both. Investment property is measured initially at its cost including transaction costs incurred in acquiring the asset. After recognition as an asset, investment property is carried at its cost less any accumulated depreciation and any accumulated impairment losses.

Subsequent costs are included in the asset's carrying amount or recognised as a separate asset, only when it is probable that future economic benefits associated with the item will flow to the Company and the cost of the item can be measured reliably. The carrying amount of the replaced part is derecognised. All other repairs and maintenance are charged to the income statement during the financial period in which they are incurred.

Land held for investment property is not depreciated. Investment property except for land is depreciated using the straight-line method over their estimated useful lives.

The depreciation method, the residual value and the useful life of an asset are reviewed at least at each financial year end and, if the management judges that previous estimates should be adjusted, the change is accounted for as a change in an accounting estimate.

**Impairment of Non-Financial Assets**

Goodwill and intangible assets that have an indefinite useful life are not subject to amortisation and are tested annually for impairment. At each reporting date, assets that are subject to amortisation are reviewed for impairment whenever events or changes in circumstances indicate that the carrying amount may not be recoverable. An impairment loss is recognised for the amount by which the asset's carrying amount exceeds its recoverable amount. The recoverable amount is the higher of an asset's fair value less costs to sell and value in use. For the purposes of assessing impairment, assets are grouped at the lowest levels for which there are separately identifiable cash flows ('cash-generating units'). Non-financial assets other than goodwill or intangible assets with an indefinite useful life that suffered impairment are reviewed

15

EXHIBIT E

PAGE 41

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

for possible reversal of the impairment at each reporting date.

**Trade Payables**

Trade payables are obligations to pay for goods or services that have been acquired in the ordinary course of business from suppliers. Trade payables are classified as current liabilities if payment is due within one year or less. If not, they are presented as non-current liabilities. Trade payables are recognised initially at fair value and subsequently measured at amortised cost using the effective interest method.

**Borrowings**

Borrowings are recognised initially at fair value, net of transaction costs incurred. Borrowings are subsequently carried at amortised cost; any difference between the proceeds (net of transaction costs) and the redemption value is recognised in the income statement over the period of the borrowings using the effective interest method. The Company classifies the liability as current as long as it does not have an unconditional right to defer its settlement for at least 12 months after the reporting date. Terms of a liability that could, at the option of the counterparty, result in its settlement by the issue of equity instruments do not affect its classification.

**Current and Deferred Income Tax**

The tax expense for the period comprises current and deferred tax. Tax is recognised in the income statement, except to the extent that it relates to items recognised in other comprehensive income or directly in equity. In this case, the tax is also recognised in other comprehensive income or directly in equity, respectively.

Management periodically evaluates positions taken in tax returns with respect to situations in which applicable tax regulation is subject to interpretation. It establishes provisions where appropriate on the basis of amounts expected to be paid to the tax authorities.

Deferred income tax is recognised on temporary differences arising between the tax bases of assets and liabilities and their carrying amounts in the financial statements. It represents future tax consequences that will arise when recovering or settling the carrying amount of its assets and liabilities. However, deferred income tax is not accounted for if it arises from initial recognition of an asset or liability in a transaction other than a business combination that at the time of the transaction affects neither accounting nor taxable profit or loss. Deferred income tax is determined using tax rates (and laws) that have been enacted or substantially enacted by the date of statement of financial position and are expected to apply when the related deferred income tax asset is realised or the deferred income tax liability is settled.

Deferred income tax assets are recognised only to the extent that it is probable that future taxable profit will be available against which the temporary differences can be utilised.

16

EXHIBIT _E_

PAGE _42_

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

Deferred income tax liabilities is provided on temporary differences arising on investments in subsidiaries and associates, except where the timing of the reversal of the temporary difference is controlled by the group and it is probable that the temporary difference will not reverse in the foreseeable future. Deferred income tax assets are recognised only to the extent that it is probable that the temporary difference will reverse in the foreseeable future and taxable profit will be available against which the temporary difference can be utilised.

Deferred income tax assets and liabilities are offset when there is a legally enforceable right to offset current tax assets against current tax liabilities and when the deferred income taxes assets and liabilities relate to income taxes levied by the same taxation authority on either the taxable entity.

Interim period income tax expense is accrued using the tax rate that would be applicable to expected total annual earnings applied to the pre-tax income of the interim period.

**Provisions**

Provisions are recognised when the Company has a present legal or constructive obligation as a result of past events and an outflow of resources required to settle the obligation is probable and can be reliably estimated. Provisions are not recognised for future operating losses.

A warranty reserve is accrued for the estimated costs of future warranty claims based on historical experience. Sales return provision is for the estimated sales returns based on the historical. Where the Company is required to restore its leased assets to their original state at the end of the lease-term, the Company recognises the present value of the estimated cost of restoration as a provision for restoration. When there is a probability that an outflow of economic benefits will occur from litigation or disputes, and whose amount is reasonably estimimable, a corresponding amount of provision is recognised as litigation and others in the financial statement.

Provisions are measured at the present value of the expenditures expected to be required to settle the obligation using a pre-tax rate that reflects current market assessments of the time value of money and the risks specific to the obligation. The increase in the provision due to passage of time is recognised as an interest expense.

**Employee Benefits**

(a) *Defined benefit liability*

The Company operates various pension schemes. The schemes are generally funded through payments to insurance companies or trustee-administered funds, determined by periodic actuarial calculations. The Company operates both defined contribution and defined benefit plans.

A defined contribution plan is a pension plan under which the Company pays fixed contributions into a separate fund. The Company has no legal or constructive obligations to pay further

EXHIBIT _E_

PAGE _43_

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

contributions even if the fund does not hold sufficient assets to pay all employees the benefits relating to employee service in the current and prior periods. For the defined contribution plan, the Company pays contributions to publicly or privately administered pension insurance plans on a mandatory, contractual or voluntary basis. The Company has no further payment obligations once the contributions have been paid. The contributions are recognised as employee benefit expense when they are due. Prepaid contributions are recognised as an asset to the extent that a cash refund or a reduction in the future payments is available.

A defined benefit plan is a pension plan that is not a defined contribution plan. Typically defined benefit plans define an amount of pension benefit that an employee will receive on retirement, usually dependent on one or more factors such as age, years of service and compensation. The liability recognised in the separate statement of financial position in respect of the defined benefit pension plan is the present value of the defined benefit liability at the end of the reporting period less the fair value of plan assets. The defined benefit liability is calculated annually by independent actuaries using the projected unit credit method. The present value of the defined benefit liability is determined by discounting the estimated future cash outflows using interest rates of high-quality corporate bonds that are denominated in the currency in which the benefits will be paid, and that have terms to maturity approximating to the terms of the related pension liability.

Actuarial gains and losses arising from experience adjustments and changes in actuarial assumptions are charged or credited to other comprehensive income in the period in which they arise.

*(b) Share-based payments*

The Company operates cash-settled, share-based compensation plans, under which the Company receives services from employees as consideration for the payments of the difference between market price of the stock and exercise price. The fair value of the employee services received in exchange for the grant of the options is recognised as an expense in the separate income statement over the vesting period. The total amount to be expensed is determined by reference to the fair value of the options granted considering the impact of any service and performance vesting conditions and non-vesting condition. Until the liability is settled, the Company shall remeasure the fair value of the liability at each reporting date and at the date of settlement, with any changes in fair value recognised in profit or loss for the period.

*(c) Other long-term employee benefits*

The Company provides other long-term employee benefits to their employees. The entitlement to these benefits is usually conditional on the employee working more than ten years. The expected costs of these benefits are accrued over the period of employment using the same accounting methodology as used for defined benefit pension plans. Actuarial gains and losses arising from experience adjustments and changes in actuarial assumptions are recognised in the income statement as they occur. These benefits are calculated annually by independent actuaries.

18

EXHIBIT _E_

PAGE _44_

**LG Electronics Inc.**
**Notes to the Interim Separate Financial Statements**
**June 30, 2010 and 2009, and December 31, 2009**

*(d) Termination benefits*

Termination benefits are payable when employment is terminated by the Company before the normal retirement date, or whenever an employee accepts voluntary retirement in exchange for these benefits. The Company recognises termination benefits when it is demonstrably committed to either: terminating the employment of current employees according to a detailed formal plan without possibility of withdrawal; or providing termination benefits as a result of an offer made to encourage voluntary retirement.

**Share Capital**

Where the Company purchases the Company's equity share capital, the consideration paid, including any directly attributable incremental costs is deducted from equity attributable to the Company's equity holders until the shares are cancelled or reissued. Where such shares are subsequently reissued, any consideration received is included in equity attributable to the Company's equity holders.

**Revenue Recognition**

Revenue comprises the fair value of the consideration received or receivable for the sales of goods and services in the ordinary course of the Company's activities. Revenue is shown net of value-added tax, returns, rebates and discounts.

The Company recognises revenue when the amount of revenue can be reliably measured, it is probable that future economic benefits will flow to the Company and when specific criteria have been met for each of the Company's activities as described below. The Company bases its estimates on historical results, taking into consideration the type of customer, the type of transaction and the specifics of each arrangement.

*(a) Sales of goods*

The Company manufactures and sells mobile communication products, multimedia, home electronics and their related core parts and display. Sales of goods are recognised when the Company has delivered products to the customer. Delivery does not occur until the products have been shipped to the specified location, the risks of obsolescence and loss have been transferred to the customer, and either the customer has accepted the products in accordance with the sales contract, the acceptance provisions have lapsed, or the Company has objective evidence that all criteria for acceptance have been satisfied.

The products are often sold with volume discounts and customers have a right to return faulty products in the market. Accumulated experience is used to estimate and provide for the discounts and returns. The volume discounts are assessed based on anticipated annual purchases. The Company recognises provisions for product warranties and sales return based on reasonable expectation reflecting warranty obligation and sales return rates incurred by sales (Note 8).

19

EXHIBIT _E_

PAGE _45_